OPINION
{¶ 1} John P. Harrison, in his capacity as Trustee of the Roxanne Sparr Harrison Revocable Living Trust (RSH Trust) and former Trustee of Predecessor Trust, is appealing from the award of attorney fees and costs to be paid out of the RSH Trust by the Greene County Probate Court following a hearing on the issues of the fees and costs held on December 12, 2002.
 {¶ 2} This matter began with a complaint to contest a Will, terminate a Trust, to remove the Trustee, and for damages filed on June 2, 2000, by plaintiff, Deanne Sparr Miller against John P. Harrison and others. It followed a torturous litigation history, but was finally settled by an agreement signed by all parties, including John P. Harrison, whose signature was witnessed by his current attorney, Jerome R. Hamilton. Neither the settlement agreement nor the signatures thereto are dated, but there was uncontested testimony at the hearing that all parties had signed off on the agreement by November 6, 2002. John P. Harrison did not appear at the hearing, allegedly because he was in jail on an unrelated matter, but his new attorney, Jerome R. Hamilton, who was also attorney on this appeal, appeared and alleged that his client was incompetent at the time he signed the settlement agreement, but no evidence was presented to the court or admitted into evidence in support of this allegation.
 {¶ 3} One of the attorneys whose fees were requested to be paid out of the RSH Trust was David Greer, who had represented Mr. Harrison throughout the long litigation initiated by the aforesaid Will complaint, but his services were terminated in November prior to the hearing. In correspondence admitted into evidence, Mr. Greer had notified Mr. Hamilton that if his client was now contesting the legal bills sent to him, he would be waiving his attorney-client privilege with regard to the matters set forth in the bills. At the hearing, Mr. Greer testified that his former client, Harrison, duly paid all of Greer's firm's bills until a restraining order was entered preserving the Trust's assets, and never complained about any of the bills submitted or any of the work done by that firm. (Tr. 12-13).
 {¶ 4} Furthermore, although Harrison's new attorney attempted to argue that the settlement agreement was a nullity, it was understood and agreed at the hearing that parts of it had already been accomplished and payments made as provided therein.
 {¶ 5} The court at the end of the hearing pronounced judgment from the bench awarding the requested attorney fees to the law firms involved as well as costs due a mediator, saying that "Mr. Greer has provided valuable services which the Trust is directed to pay." (Tr. 55). It is further clear from the record of the entire litigation that the Probate Court was very familiar with the work done by the various attorneys involved in the litigation.
 {¶ 6} The appellant brings the following two assignments of error on appeal:
 {¶ 7} "1. The trial court abused its discretion when it solicited attorney Greer's testimony against the interests of John P. Harrison, trustee.
 {¶ 8} "2. The trial court abused its discretion when it ordered the RSH trust to pay all attorney fees."
 {¶ 9} We find that neither of these assignments have any merit whatsoever. As to the first, the trial court not only was within its discretion to obtain testimony about the legal fees that had been billed to Mr. Harrison, as Mr. Greer was certainly in the best and probably only position to support those fees, which he did in detail. During his testimony in support of his fees, Mr. Greer stated:
 {¶ 10} "He [Mr. Harrison] nonetheless received bills with detailed itemizations for everything that we have done on his behalf. And he, uh, was a cooperative client in the sense that he would come in, we had long discussions about every aspect of this case on repeated occasions. Numerous phone calls. He was a difficult client in the sense that we had to exercise a lot of patience in dealing with him because he had a hard time making up his mind about things or responding to discovery requests. That sort of thing.
 {¶ 11} "But, he never raised any complaint, any protest about anything we did on his behalf or about any bill or charge that we submitted to him. So, I think not only does this Court have jurisdiction as a result of his consent and the Restraining Order and the nature of the action, but he has indeed consented to the charges that we have made to him.
 {¶ 12} "He has a perfect right to terminate the relationship and as I told him in my letter to him that's fine. I had no, I had not undertaken to represent him in any matter other than this litigation. And that, my services in that were added in once he agreed to the settlement." (Tr. 12-13).
 {¶ 13} As for the second assignment, the trial court clearly had discretion to order the Trust to pay all the attorney fees it had incurred during the course of the litigation. Section 2101.24(B)(1)(b) of the Ohio Revised Code extends Probate Court jurisdiction to "any action that involves an Inter Vivos Trust." This includes action to award attorney fees. See, e.g., Waterman v. Elk Elk Co. LPA (1994),96 Ohio App.3d 772.
 {¶ 14} There is no support in the record before us for either assignment of error, which are overruled. The judgment is affirmed.
Fain, P.J. and Wolff, J., concur.