SCHROEDER, Appellee,

v.

DeVITO et al., Appellants.

[Cite as *Schroeder v. DeVito* (2000), 136 Ohio App.3d 610.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 75715.

Decided Feb. 14, 2000.

*Timothy F. Sweeney,* for appellee.

*Paul W. Flowers Co., L.P.A.,* and *Paul W. Flowers;* and *Jack Landskroner,* for appellants.

JAMES M. PORTER, Judge.

Defendants-appellants Christopher M. DeVito and his law firm appeal from an order of the trial court in favor of plaintiff-appellee Michael A. Schroeder, denying the stay of the lawsuit pending arbitration of an alleged attorney fee dispute before the local bar association. The defendants contend that the trial court erred as a matter of law in refusing to enforce the mandatory arbitration of attorney fee dispute requirements of DR 2–107(B). We disagree and affirm the decision below.

In 1994, plaintiff and defendants reached an agreement where plaintiff would set up his new law practice in extra office space available at the DeVito firm. As part of the agreement, the DeVito firm agreed that it would not require plaintiff to pay any rent for this office space if plaintiff devoted a certain number of hours

to the firm assisting with its litigation case files. Plaintiff occupied the office space and worked under this agreement from October 1994 to approximately May 1995.

In November 1993, the DeVito firm became counsel for Jim's Steak House in its action against the city of Cleveland, which was pending in the Cuyahoga County Common Pleas Court. The DeVito firm represented Jim's Steak House pursuant to a contingency agreement where the firm would receive forty percent of any settlement or judgment.

Plaintiff asserts that in October 1994, because very little work had been done on the Jim's Steak House case and it required substantial work to be ready for trial, DeVito and the DeVito firm requested plaintiff to serve as co-counsel on the case. The case was scheduled to go to trial in late November. Plaintiff asserts that he and the defendants entered into a joint venture agreement where DeVito and the DeVito firm represented and promised him that in exchange for his assistance in the litigation, plaintiff would receive fifty percent of any contingent attorney fees received from a judgment or settlement. Plaintiff further asserts that the parties agreed that this agreement was separate from their office-sharing agreement and that Jim's Steak House agreed to plaintiff's participation as co-counsel in the case on the 50/50 fee-sharing basis with the defendants.

The Jim's Steak House trial began on November 21, 1994. Plaintiff acted as co-counsel throughout the trial. After five days of trial, the jury found in favor of Jim's Steak House and against the city of Cleveland in the amount of $483,000. The city appealed the decision to this court and to the Ohio Supreme Court. See *Jim's Steak House, Inc. v. Cleveland* (1998), 81 Ohio St.3d 18, 688 N.E.2d 506. Plaintiff continued to assist and participate in the case during the appeals. On April 30, 1998, after the Ohio Supreme Court upheld the jury's verdict in favor of Jim's Steak House, the city of Cleveland paid the $483,000 judgment, plus interest, for a total of $658,800. Pursuant to the forty percent contingent fee agreement, the defendants received approximately $263,520 as attorney fees for the successful Jim's Steak House litigation. The defendants also received approximately $60,000 for their appellate work on the case.

The instant case arises from plaintiff's claim that defendants DeVito and the DeVito firm refused to comply with their 50/50 contingency fee agreement with plaintiff for the Jim's Steak House litigation. The defendants, on the other hand, contend that plaintiff is not entitled to any portion of the $658,000 judgment because there was no joint venture agreement, as plaintiff alleges, and that his work on the case was done solely in exchange for his use of the office space at the DeVito firm. Basically, defendants contend that plaintiff had no contract with Jim's Steak House or defendants for any percentage of the legal fees.

On October 9, 1998, defendants filed a motion to dismiss asserting that the trial court lacked subject matter jurisdiction and that this dispute should be submitted to arbitration pursuant to DR 2–107. In an order issued on November 19, 1998, the trial court denied defendants' motion. A second order was issued on November 30, 1998, reflecting that "[t]here is no just cause for delay."

Defendants now timely appeal.

The defendants' sole assignment of error states as follows:

"I. The trial court erred, as a matter of law, by refusing to enforce the mandatory arbitration requirements of DR 2–107(B)."

Defendants assert that this case is within the requirements of DR 2–107 and, therefore, it should be resolved by arbitration/mediation before the local bar association. More specifically, defendants assert that this case involves a "dispute between lawyers" for the "division of fees" and DR 2–107(B) requires that such cases be decided "in accordance with mediation or arbitration provided by a local bar association." Defendants assert that the trial court lacked jurisdiction to decide this dispute. We disagree.

DR 2–107, states:

"(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:

"(1) The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility for the representation;

"(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;

"(3) The total fee is reasonable.

"(B) In cases of disputes between lawyers arising under this rule, fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration."

Under its plain language, only disputes between lawyers regarding a "division of fees" are within this rule and shall be decided by arbitration/mediation. Plaintiff argues that DR 2–107 has no application in this case because it does not involve a "division of fees." Plaintiff asserts that this case is a dispute between the parties as to whether they entered into a joint venture agreement for a 50/50 split of the fees generated from the Jim's Steak House litigation judgment. Therefore, DR 2–107 did not apply and the trial court retained subject matter jurisdiction. We agree.

■ In *Putnam v. Hogan* (1997), 122 Ohio App.3d 351, 701 N.E.2d 774, the court similarly stated that "DR 2–107(B) applies to the dispute between or among two or more attorneys disagreeing on dividing an agreed fee." We find that the rule and the applicable case law support the conclusion that there must be an agreement before DR 2–107 will apply.

The facts in the instant case are nearly identical to those in *Schulman v. Wolske & Blue Co. L.P.A.* (1998), 125 Ohio App.3d 365, 708 N.E.2d 753, where the court held that DR 2–107(B) does not divest the trial court of subject matter jurisdiction when there is a dispute regarding the enforceability of an oral agreement. In *Schulman*, the plaintiff attorney entered into an oral agreement with the defendant law firm to assist as co-counsel in a personal injury case in exchange for forty percent of the attorney fees recovered. The case was settled prior to trial and it was undisputed that Schulman performed under the agreement. However, the firm refused to pay. Plaintiff Schulman subsequently filed a breach-of-contract claim against the firm. After the trial court granted summary judgment in favor of Schulman, the law firm appealed, arguing that under DR 2–107(B), the trial court did not have jurisdiction to entertain a fee dispute between two lawyers who are not in the same firm because such disputes were to be submitted to arbitration or mediation.

In affirming the trial court's decision, the *Schulman* court stated:

Initially, this court notes that "DR 2–107(B) provides that mediation or arbitration is appropriate in cases of disputes between lawyers *arising under DR 2–107(A)*. There is nothing in the record to demonstrate that DR 2–107(A) was complied with. There is no evidence that the oral agreement between the parties in this matter was ever made with the prior consent of the client. Moreover, DR 2–107(A)(2) provides that the terms of the division and the identity of all lawyers sharing in the fee should be disclosed in writing to the client. The only 'writing' contained in the record before this court is Schulman's letter to Jason Blue confirming their conversation regarding the sharing of fees.

"Given that DR 2–107(A) was not complied with, it is not clear whether the parties ever intended to have DR 2–107(A) apply. The trial court found that the instant action involved a dispute regarding an oral agreement and the enforceability of that agreement. Wolske & Blue argued that the agreement was voidable because of fraud in the inducement. These issues may be resolved by applying general principles of contract law and the trial court has subject-matter jurisdiction over such disputes. This case does not involve simply a fee dispute and nothing more. Moreover, Wolske & Blue has not cited this court to authority for the proposition that DR 2–107 actually *divests* a trial court of subject matter jurisdiction in a case such as this. See *Climaco, Climaco, Seminatore, Lefkowitz*

*& Garofoli Co., L.P.A. v. Robert E. Sweeney Co., L.P.A.* (1997), 123 Ohio App.3d 289, 704 N.E.2d 47; (DR 2–107(B) does not divest the trial court of jurisdiction over a breach of contract action).

"The trial court correctly determined that there is a difference between a dispute in which the lawyers are arguing what the amount of the fee or percentages should be, and a dispute in which the lawyers are arguing whether that is an enforceable fee agreement in the first place."

Recently, this court in *Fred Siegel Co. v. Provident Mgt., Inc.* (Nov. 19, 1998), Cuyahoga App. No. 72303, unreported, 1998 WL 811310, endorsed and relied on *Schulman,* holding that DR 2–107 does not apply when there is no agreement between the parties regarding the division of fees. In *Fred Siegel,* we held:

"DR 2–107(A) applies only under a very narrow set of circumstances. Because there was no agreement with plaintiff, as well as no concurrent representation, the mandatory arbitration provided for in DR 2–107 does not apply. Accordingly, in each of these cases the trial court erred by staying the case and referring the matter to arbitration."

Based on these authorities, in order for the arbitration/mediation provisions of DR 2–107(B) to apply, an agreement between the parties in accordance with DR 2–107(A) for the division of fees must exist. It is undisputed that the parties entered into an initial agreement for the use of defendants' office space in exchange for plaintiff's legal work. However, there is a clear dispute regarding the existence of a subsequent oral agreement between the parties regarding the Jim's Steak House litigation fees. As discussed above, issues regarding the existence or enforceability of an agreement "may be resolved by applying the general principles of contract law and the trial court has subject matter jurisdiction over such disputes." Accordingly, we find that this case is not a dispute under a fee agreement between the parties as to how the fees are divided, but, rather, a dispute regarding the actual existence of such an agreement. Therefore, the arbitration/mediation provisions of DR 2–107(B) have no application to this case and the trial court properly retained subject matter jurisdiction to hear this dispute.

Defendants' sole assignment of error is overruled.

Order denying arbitration is affirmed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

O'DONNELL, P.J., and ROCCO, J., concur.